Chief Justice Robertson
delivered the Opinion of the Court.
On the 11th of April, 1831, Daniel Mcllvoy.executed a deed of trust, including various articles of property, for securing to Crow and Jarvis a debt of eight hundred and eighty dollars, and to several other creditors other debts, The deed embraced (inter alia) four slaves previously mortgaged (October 5 th, 1830,) by Daniel Mcllvoy, to one Walsh, to indemnify him for being his surety for a debt to D. Irvine, and for another debt to Dennis Mc-JJyoy.
Walsh having afterwards, in 1832, bought Daniel Mc-]QVOy’s equitable interest in those slaves, at sales under J ^ , executions which had been issued against his estate, upon judgments obtained by other creditors, thereupon sold to one Tinsley the equity thus acquired, and also, in consideration of an agreement by the latter, to indemni- ° “ , , fy him as Mcllvoy’s surety, assigned to him the benefit ^is mortgage-
Crow and Jarvis having afterwards, in 1833, filed a in chancery for enforcing the deed of trust of 1831, for the benefit of themselves and the other beneficial *403 parties to it — all of whom, as well as Mcllvoy amd Tinsley and the trustees, were made defendants — Tinsley, in his answer, insisted that — having, as he assumed, united in himself the legal title and the equity' of redemption, without actual notice of the incumbrance asserted by the complainants — he held an absolute and indefeasible right to the slaves, not subject to redemption or question; and that, therefore, the bill ought, to be dismissed.-
And the Circuit Judge, seeming to be of the same opinion, accordingly dismissed the bill, on the final, hearing of the cause.
The principal question now to be considered, is whether, according to the foregoing admitted facts, the plaintiffs in error have- any available interest in those slaves. And this question cannot be essentially affected by the fact that the deed of trust includes property not embraced by the prior mortgage; because it seems to have been admitted that all or very nearly all of the property, excepting those slaves, had been either consumed by Mcllvoy, or subjected to the payment of debts due to some of his other creditors-
Tinsley’s condition- cannot be better than that of-Walsh, whom he claims to have succeeded, and in whose place he asks to be substituted. Then, what was the condition of Walsh when he transferred all his interest to Tinsley? It was clearly, as we think, that of a pri- or incumbrancer only.. As Mcllvoy’s equitable interest in the slaves was sold under execution after he had executed the deed of trust for the benefit of the plaintiffs and others, Walsh neither acquired, nor could have acquired, by his purchase at those sales, any other or greater right than- Mcllvoy then had.- And • Mcllvoy’s only available interest which was sold under the executions, was his right to redeem the slaves from all existing incumbrances. It was this equitable right, and not merely his equity of "redemption under Walsh’s mortgage only, which was sold. And, as to that equity, therefore, Walsh, when he bought it, occupied the place of Mcllvoy, and none other or better. No other interest was sold under execution. Of course, the right thus bought by Walsh, *404 was subject to the existing and prior incumbrance of the plaintiffs and their associates.
Query-whether a mortgagee the equity ofaredemption under gage only, without notice of a cumbrance, can hold the property the discharged latter.
Query — whether the registration of the mortgage of an equity constractive notice.
It has been decided in N. Y. &e. that a decree of foreclosure, when there are junior mortgagees not parties to the suit, does not affect them; they are therefore, necessary parties. And that, where a judg’t is a lien on an equity of redemption, and a senior mortgagee purchases the judg t, the prior mortgage only, will take precedence of the junior mortgage ;which takes precedence of the judgment in the hands of the senior mortgagee.
*404 It is not material, therefore, to decide whether, if Walsh had bought the equity of redemption under his 0WI1 mortgage only, "without notice of any other lien, that equity, thus acquired subsequently to that of the plaintiffs, should, when united with his title as mortgagee, have prevailed over their right thus previously acquired to the same equity. Nor need we decide the mooted question, whether the registration of a mortgage of an equity of redemption should be deemed "constructive notice of the existence of such an equitable lien. The statute of this State subjecting equities of redemption to sale under execution, could confer no greater right than that w'hich was sold; and it is evident that, in this case, no other interest than the general equity to which Daniel Mcllvoy was entitled at the time of the sale, wras sold or bought under the executions. It is evident, therefore, that Walsh acquired by his purchase under execution, no other interest than Mcllvoy then had, and .can hold no other, in virtue of that purchase, than any other person would have acquired and been entitled to hold in consequence of a contract of purchase made with Mcllvoy himself. And can there be any doubt that, as between persons claiming a right to the same equity — each being equally meritorious — he who acquired the first right must prevail, and that whether the posterior claimant had notice of the prior right or not, is altogether immaterial in such a case?
It has even been decided, and often, that a decree of foreclosure upon a bill filed upon a prior mortgage, will not extinguish or affect the right of redemption by a subsequent mortgagee who was not a party to the suit, and whose mortgage was subsisting at the date of the decree upon the elder mortgage; and that, therefore, in such a case, all subsequent incumbrancers are necessary parties. See Haines vs. Beach, 3 Johnson's Chy. Rep., 459, and the cases therein cited.
It has also been decided, that a prior mortgagee, who buys the equity of redemption, under a sale upon a judgment in his favor for another debt, operating as a *405 lien on that equity, subsequently to the subsisting incumbrance of a second mortgagee, still holds the property as prior mortgagee only, and will be subject to redemption by the sécond mortgagee, upon payment of the debt due on the first mortgage only. McKinney vs. Mirvin et al. Ib. 466.
We are clearly of the opinion, therefore, that if, as the assignee of the mortgage of 1830, Tinsley has any available right, the slaves may, nevertheless, be subjected to the satisfaction of the trust sought to be enforced by the bill in this case, upon payment of whatever may be justly due under the prior mortgage; and that his right to the equity of redemption must be postponed to the prior right claimed under the deed of trust.
And consequently, the Circuit Judge, in our opinion, erred in dismissing the bill.
But, on the return of the case to the Court below, it would be proper to make Walsh and Dennis Mcllvoy or their representatives parties; because, as Walsh, not only is the first mortgagee,'but may still be liable to some extent as Daniel Mcllvoy’s security, he may be affected by the final decree which may be rendered, and is therefore a necessary party; and because, as Dennis Mcllvoy might have a right to be substituted in the place of the first mortgagee, for the purpose of- making his debt, if it be still due and unpaid, and as, moreover, the existence of that debt is a matter to be litigated in this case, he (Dennis) would be a proper party.
Wherefore, the decree of the Circuit Court is reversed, and the cause remanded.